KEVIN J. SMITH,
    *Plaintiff,*

    v.

JAMES J. LYNK,
    *Consolidated Plaintiff,*

    v.

AAA NORTHEAST, INC.,            No. 3:18-cv-01671
    *Intervenor Plaintiff,*

    v.

STEPHON L. BRAYBOY, PENSKE TRUCK
LEASING CORP., PENSKE TRUCK
LEASING CO LP, DAWN
TRANSPORTATION, L.L.C.,
    *Defendants,*

    v.

DAWN FOOD PRODUCTS, INC.,
    *Consolidated Defendant.*

## RULING AND ORDER ON MOTION TO DISMISS

This consolidated case involves a car accident with two different Plaintiffs: James J.

Lynk and Kevin Smith.

Stephon Brayboy and Dawn Transportation, L.L.C., two of the Defendants in this case,

have moved to dismiss the Second, Third and Fourth Counts of Mr. Lynk's Amended Complaint

under FED. R. CIV. P. 12(b)(6) and D. CONN. L. CIV. R. 7 for failure to state a claim. Mot. to

Dismiss, ECF No. 32 (Jan. 24, 2019) ("Mot. to Dismiss Lynk Am. Compl."); Memo. Sup. Mot. to Dismiss, ECF No. 32-1 (Jan. 24, 2019) ("Memo. Sup. Mot. to Dismiss Lynk Compl.").

On the same day, Mr. Brayboy, Penske Truck Leasing Corp., Penske Truck Leasing Co., L.P. (collectively, "Penske Defendants" or "Penske"), Dawn Transportation, L.L.C., and Dawn Food Products, Inc. (collectively, "Dawn Defendants" or "Dawn") moved to dismiss the statutory and common law recklessness counts in Mr. Smith's Amended Complaint under FED. R. CIV. P. 12(b)(6) and D. CONN. L. CIV. R. 7 for failure to state a claim. Mot. to Dismiss, ECF No. 33 (Jan. 24, 2019) ("Mot. to Dismiss Smith Am. Compl."); Memo. Sup. Mot. to Dismiss, ECF No. 33-1 (Jan. 24, 2019) ("Memo. Sup. Mot. to Dismiss Smith Am. Compl.").

For the following reasons, the Defendants' motion to dismiss claims in Mr. Lynk's Amended Complaint is **GRANTED**, and the Defendants' motion to dismiss claims in Mr. Smith's Amended Complaint is **DENIED** in part and **GRANTED** in part**.**

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Mr. Smith and Mr. Lynk each filed their cases separately, and the Defendants have moved to dismiss counts in each lawsuit separately. In this now consolidated case, the Court will set forth the facts, as alleged separately in the two Amended Complaints, and will then proceed with a combined procedural history.

### A.      Factual Allegations in Mr. Lynk's Amended Complaint[1]

"On or about June 16, 2017, at approximately 10:22 p.m.," Mr. Lynk was allegedly driving south on Interstate 95 ("I-95") at or near Exit 19 in Fairfield, Connecticut. Lynk Am. Compl., First Count, ¶ 7. Mr. Lynk allegedly pulled over and stopped "within the right-hand shoulder" of I-95 behind a disabled motorist. *Id.* First Count, ¶ 8. Mr. Lynk allegedly got out of

---

[1] All factual allegations are drawn from Mr. Lynk's Amended Complaint. Lynk Am. Compl., ECF No. 25 (Dec. 20, 2018).

his car to assist the disabled motorist. A flatbed truck then allegedly pulled up and parked behind Mr. Lynk's vehicle with its towing lights on. *Id.* First Count, ¶ 9.

At that time, Mr. Brayboy, an alleged "agent, servant, and/or employee" of Defendant Dawn Transportation, allegedly was, "within the scope of his employment and/or agency," operating a commercial freightliner "owned, leased, maintained, and/or controlled" by Dawn. *Id.* First Count, ¶ 2-3. Mr. Brayboy allegedly was driving the freightliner "in a southerly direction in the right lane of I-95, at or near Exit 19, in Fairfield, Connecticut, and had reached a point in the roadway behind the vehicles parked within the right shoulder." *Id.* First Count, ¶ 10.

While Mr. Lynk allegedly was standing behind his vehicle, Mr. Brayboy then allegedly "crossed into the right-hand shoulder and, suddenly and without warning, struck the rear end of the flatbed truck, propelling [the truck] into the [P]laintiff and pinning the [P]laintiff under the flatbed." *Id.* First Count, ¶ 11.

Following the incident, Mr. Lynk allegedly sustained numerous injuries, damages, and losses, including open wounds, spine injuries, bone fractures, pain, weakness, hemorrhage, respiratory failure, impaired mobility, delirium, and traumatic brain injury. *Id.* First Count, ¶ 13. These injuries allegedly caused Mr. Lynk to incur "considerable expenses" for medical care, including surgeries, physical therapy, and medicine. *Id.* First Count, ¶ 14. Mr. Lynk also alleges that he "suffered a loss of wages and/or earning capacity, and his future earning capacity will likely be impaired . . ." and that he will be "unable to pursue his usual activities to the same extent as prior to the accident." *Id.* First Count, ¶ 15-16.

Mr. Lynk repeats these allegations as to Counts Two through Six. *Id.* at 9-18.

## B.     Factual Allegations in Mr. Smith's Amended Complaint[2]

"On June 16, 2017, at approximately 10:20 p.m.," Mr. Smith allegedly was dispatched by his employer, American Automobile Association ("AAA"), "to assist the operator of a disabled vehicle located in the right should adjacent to the Interstate 95 [("I-95")] southbound Exit 19 on-ramp in the Town of Fairfield, Connecticut, due to a prior accident." Smith Am. Compl. ¶ 9.

"Plaintiff's AAA vehicle and the vehicle of another AAA employee were [allegedly] stopped and parked directly behind the disabled vehicle in the right shoulder, and plaintiff and his co-worker were outside their vehicles assisting the disabled motorist." *Id.* ¶ 10.

At that time, Stephon Brayboy allegedly was "operating a 2016 Freightliner M2 Box Truck owned by [D]efendants Penske Truck Leasing Corp., separately and/or as general partner of [D]efendant Penske Truck Leasing Co., L.P. in the right-hand lane of [I-95] southbound, when he suddenly and without warning crossed into the right shoulder and struck the two AAA vehicles, one of which struck [P]laintiff and threw him violently into a concrete barrier alongside the roadway." *Id.* ¶ 12.

"At all relevant times," Stephon Brayboy allegedly was "acting as the agent, servant, and/or employee of [D]efendants Dawn Food Products, Inc. and/or Dawn Transportation, L.L.C.," *Id.* ¶ 13.

Also "[a]t all relevant times, [P]laintiff and/or his coworker were [allegedly] operating 'emergency vehicles' within the meaning of General Statutes Section 14-243b." *Id.* ¶ 11.

At the time of the accident, Mr. Brayboy allegedly was driving on only four hours and fifteen minutes of sleep, and he had allegedly been awake for 19 hours, "of which in excess of 18

---

[2] All factual allegations are drawn from Mr. Smith's Amended Complaint. Smith Am. Compl., Ex. A, ECF No. 8-1 (Oct. 21, 2018).

hours was on duty, and in excess of 16 hours was spent driving and making deliveries over a distance of 400 miles." *Id.* ¶ 14-15.

"Earlier on the evening of the accident, at approximately 8:18 p.m., [Mr. Brayboy] had [allegedly] been taken out of service for ten hours by a state trooper on [I-95] southbound in Waterford, Connecticut, for an hours of service (HOS) violation. After waiting for the trooper to depart, however, he resumed driving approximately 30-45 minute[s] later." *Id.* ¶ 16.

Additionally, Mr. Brayboy allegedly was

operating the [D]efendants' motor vehicle with: (1) the clamp brakes out of adjustment, Axle 2, right; (2) the automatic airbrake adjustment system not compensating for wear; (3) the brakes out of service with greater than or equal to 20% of the brakes found to be defective; such that the [D]efendants' vehicle was not safe for operation and should have been taken out of service.

*Id.* ¶ 17.

Mr. Brayboy also allegedly was driving between 65 and 70 miles per hour in a 55 miles per hour speed zone. *Id.* ¶ 18.

Following the incident, Mr. Smith allegedly sustained numerous injuries, including lumbar disc herniation and/or aggravation thereof, pain, contusion, tendinitis, and physical, mental, and emotional distress. *Id.* ¶ 23. Mr. Smith has allegedly incurred and/or will continue to incur "considerable expense" for medical care, including hospitalization, surgery, medical care and treatment, and x-rays. *Id.* ¶ 24. Mr. Smith also alleges that he "lost time from work and/or his ability to earn a living has been impaired," *Id.* ¶ 25, and that his "ability to enjoy life's activities has been curtailed." *Id.* ¶ 26.

### B. Procedural History

On September 7, 2018, Kevin Smith sued Stephon Brayboy, Penske Truck Leasing Corp., and Penske Truck Leasing Co., L.P. (collectively, "Penske Defendants" or "Penske") for negligence in Connecticut Superior Court. Notice of Removal, ECF No. 1 (Oct. 9, 2018).

On October 9, 2018, Mr. Brayboy and Penske removed the lawsuit to this Court. *Id.*

On October 8, 2018, in a separate action arising out of the same accident, James J. Lynk sued Stephon Brayboy and Dawn Food Products in Connecticut Superior Court, bringing claims of negligence, recklessness, and violation of Connecticut General Statutes § 14-295. Notice of Removal, ECF No. 1, *Lynk v. Brayboy*, 3:18-cv-01755-WWE, at 10-29 (Oct. 24, 2018).

On October 24, 2018, Defendants in Mr. Lynk's case also removed his case to the District of Connecticut. *Id.* at 1.

On October 21, 2018, Mr. Smith filed a motion to amend/correct his Complaint, Mot. to Amend/Correct, ECF No. 8 (Oct. 21, 2018) ("Mot. to Amend"), along with an Amended Complaint, Smith Am. Compl., Ex. A, ECF No. 8-1 (Oct. 21, 2018). The Amended Complaint sought to join Dawn Transportation, L.L.C. and Dawn Food Products, Inc. (collectively, "Dawn Defendants" or "Dawn"), and to add claims for recklessness and violation of Connecticut General Statutes § 14-222. Mot. to Amend at 3-4.

On October 31, 2018, Mr. Brayboy and Penske filed a motion to consolidate Mr. Lynk's and Mr. Smith's cases. Consent Motion to Consolidate, ECF No. 11 (Oct. 31, 2018).

On November 1, 2018, the Court granted the motion to consolidate the cases. Order, ECF No. 12 (Nov. 1, 2018). The Smith and Lynk cases now proceed together under the present caption, *Smith v. Brayboy*, 3:18-cv-01671-VAB.

On December 17, 2018, the Court granted Mr. Smith's motion to amend. Order, ECF No. 22 (Dec. 17, 2018).

On December 20, 2018, Mr. Lynk filed an Amended Complaint substituting Dawn Transportation for Dawn Food Products. Lynk Am. Compl., ECF No. 25 (Dec. 20, 2018). Dawn Food Products did not object.

On January 24, 2019, Mr. Brayboy and Dawn Transportation, L.L.C. moved to dismiss the Second, Third and Fourth Counts of Mr. Lynk's Amended Complaint under FED. R. CIV. P. 12(b)(6) and D. CONN. L. CIV. R. 7 for failure to state a claim. Mot. to Dismiss, ECF No. 32 (Jan. 24, 2019) ("Mot. to Dismiss Lynk Am. Compl."); Memo. Sup. Mot. to Dismiss, ECF No. 32-1 (Jan. 24, 2019) ("Memo. Sup. Mot. to Dismiss Lynk Am. Compl.").

On the same day, Mr. Brayboy, Penske, and Dawn moved to dismiss the statutory and common law recklessness counts in Plaintiff Kevin Smith's Amended Complaint under FED. R. CIV. P. 12(b)(6) and D. CONN. L. CIV. R. 7 for failure to state a claim. Mot. to Dismiss, ECF No. 33 (Jan. 24, 2019) ("Mot. to Dismiss Smith Am. Compl."); Memo. Sup. Mot. to Dismiss, ECF No. 33-1 (Jan. 24, 2019) ("Memo. Sup. Mot. to Dismiss Smith Am. Compl.").

On April 7, 2019, Mr. Smith filed a memorandum opposing Defendants' motion to dismiss. Memo. Opp. Mot. to Dismiss, ECF No. 38 (Apr. 7, 2019) ("Smith Opp.").

The next day, Mr. Smith filed an exhibit in support of his opposition to the motion to dismiss. Ex. A Sup. Memo. Opp., ECF No. 39 (Apr. 8, 2019) ("Smith Opp. Memo.").

On April 12, 2019, Mr. Lynk filed an objection to Defendants' motion to dismiss, Opp. Mot. to Dismiss, ECF No. 40 (Apr. 12, 2019) ("Lynk Opp."), and a memorandum in opposition to Defendants' motion to dismiss, Memo. Opp. Mot. to Dismiss, ECF No. 40-1 (Apr. 12, 2019) ("Lynk Opp. Memo.").

On September 19, 2019, the Court had scheduled a hearing on both motions to dismiss, but the argument was cancelled due to a scheduling conflict. ECF Entry (Sept. 18, 2019). The Court decided to issue an order without argument unless one of the parties requested argument. *Id.* Neither party requested argument, so the Court proceeded without one.

## II.    STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the

plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.  DISCUSSION

### A.  The common law recklessness claims against Mr. Brayboy

Under Connecticut law, recklessness is "more than negligence, more than gross negligence." *Scandul v. Student Transp. of Am., Inc.*, No. 3:16-CV-58 (JBA), 2017 WL 1086766, at *2 (D. Conn. Mar. 22, 2017) (quoting *Bordonaro v. Senk*, 109 Conn. 428, 429 (1929)). Recklessness entails "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent . . . . and [i]t is at least clear . . . that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention." *Craig v. Driscoll*, 262 Conn. 312, 343 (2003), *superseded by statute on other grounds as stated in Caciopoli v. Lebowitz*, 309 Conn. 62, 70 (2013)).

Recklessness "requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable [person]." *Scandul*, 2017 WL 1086766, at *2 (citing *Bishop v. Kelly*, 206 Conn. 608, 614 (1988)). "Although the state of mind amounting to recklessness may be inferred from conduct, to infer the proper state of mind, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them." *Lee v. Coss*, 201 F.3d 431 (2d Cir. 1999), citing *Dubay v. Irish*, 542 A.2d 711, 718 (Conn. 1988).

To survive a motion to dismiss, a plaintiff must allege facts supporting a reasonable inference that the defendant made a conscious decision to take an action "either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable [person]." *Scandul*, 2017 WL 1086766, at *2.

Where a recklessness claim is brought in a car accident case, Connecticut courts have regularly required plaintiffs to allege specific facts indicating that a driver made a conscious choice to act in a way that disregarded the safety of others. *See, e.g.*, *Scandul*, 2017 WL 1086766, at *3 ("Here, [p]laintiff has alleged that there was no alteration in Ms. Pryce's manner of driving despite the onset of the glare in her face. It is the decision to continue driving at the same speed and in the same fashion—without braking, honking, or decelerating—despite recognizing that she was temporarily blinded that is sufficient to support an allegation of recklessness at this stage."); *Titus v. Holcomb*, No. LLICV136009681S, 2014 WL 1345322, at *4 (Conn. Super. Ct. Mar. 11, 2014) (denying a motion to dismiss where the plaintiff alleged that the defendant drove through a stop sign into the path of an approaching vehicle that was clearly visible because of its headlights: "the defendant was distracted and, therefore, possessed the state

of mind necessary for a recklessness claim"); *Mulvey v. Aivano*, No. CV075016014S, 2008 WL 2345875, at \*2 (Conn. Super. Ct. May 19, 2008) (granting a motion to dismiss because plaintiff made "no reference to any weather conditions, sun glare, [or] time of day which would make the defendant's actions reckless. Evidence need not be pleaded under our rules but some factual claims must be made which indicate recklessness not negligence is involved.").

### 1. Mr. Lynk's common law recklessness claim against Mr. Brayboy

Mr. Lynk claims that Mr. Brayboy "acted in reckless, willful, wanton, and/or malicious disregard for the safety of other persons, including the [P]laintiff," in his operation of the freightliner, and that Mr. Brayboy's recklessness caused Mr. Lynk's injuries, damages, and losses. Lynk Am. Compl., Second Count, ¶ 12. Defendants argue that Mr. Lynk fails to allege any detailed facts from which the Court could reasonably infer that Mr. Lynk operated the freightliner recklessly under Connecticut common law. Memo. Sup. Mot. to Dismiss Lynk Compl. at 6-7.

The Court agrees.

Mr. Lynk does not allege facts sufficient for the Court to infer that Mr. Brayboy made a consciously dangerous decision. The Complaint alleges only that Mr. Brayboy was driving "in a southerly direction" on I-95, "reached a point in the roadway behind the vehicles parked within the right shoulder," "crossed into the right-hand shoulder and, suddenly and without warning, struck the rear end of the flatbed truck, propelling [the truck] into the [P]laintiff and pinning the [P]laintiff under the flatbed." Lynk Am. Compl., First Count, ¶ 10-11. Mr. Lynk also alleges that Mr. Brayboy "operated the freightliner knowing that the brakes were defective and had not been adequately inspected, maintained, and/or repaired", *id.* at Second Count, ¶ 12, without alleging

sufficient facts about the state of the freightliner's brakes, or Mr. Brayboy's knowledge of the state of the freightliner's brakes.

Mr. Lynk also alleges that Mr. Brayboy drove "at an excessive rate of speeding, when he knew that such rate of speed posed a substantial risk of injury and risk to the safety of other individuals on the highway." *Id.* But Mr. Lynk does not allege that Mr. Brayboy was driving at any particular speed, nor the presence of any speed limit signs, nor any information about the state of traffic to allow a reasonable inference that Mr. Brayboy was speeding.

Mr. Lynk additionally alleges that Mr. Brayboy drove the freightliner "when it was not equipped with brakes adequate to bring it to a controlled stop within the distance and under the conditions prescribed; and that he "operated the freightliner with insufficient brakes when it was unsafe to do so. . ." *Id.* Again, however, Mr. Lynk does not allege facts sufficient to allow an inference about the condition of the freightliner's brakes, nor does he allege any facts illustrating the "conditions" to which he refers.

Mr. Lynk also alleges that Mr. Brayboy "operated the freightliner recklessly, having regard to the width, traffic, and use of said highway, so as to endanger the life of others, including the [P]laintiff." *Id.*

Mr. Lynk argues that "[t]he Connecticut Supreme Court has made it abundantly clear that the standard for diversifying a recklessness claim from a negligence claim is very low," Lynk Opp. Memo. at 8 (citing *Craig*, 262 Conn. at 343 (2003)), and that the mere use of the word "reckless" is sufficient to state a claim of recklessness, *Id.* (quoting "*Duond* [*sic*] *v. Denehy*, 145 Conn. 88, 90 (Conn. 1958)").

The Court disagrees.

Mr. Lynk's allegation that Mr. Brayboy "operated the freightliner recklessly" is conclusory under *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Mr. Lynk relies on the Connecticut Supreme Court's statement in *Craig* that "[a]lthough there is a difference between negligence and a reckless disregard of the rights or safety of others, a complaint is not deficient so long as it utilizes language explicit enough to inform the court and opposing counsel that both negligence and reckless misconduct are being asserted." Lynk Opp. Memo. at 8 (citing *Craig*, 262 Conn. at 343).

But the Connecticut Supreme Court in *Craig* and subsequent Connecticut lower court rulings applying this principle indicate that a complaint sufficiently pleads recklessness "so long as it utilizes language [in alleging the facts underpinning the claims] explicit enough to inform the court and opposing counsel that both negligence and reckless misconduct are being asserted," *Craig*, 262 Conn. at 343. It is not enough, as Mr. Lynk suggests, to use language conclusorily stating that a defendant was reckless. For example:

> [W]here the allegations of a count of a contested pleading support a cause of action of recklessness, the count sounding in recklessness may well be sufficient to withstand a motion to strike even though the allegations of reckless conduct are also alleged as a basis of negligent conduct in a count sounding in negligence. . . However, merely incorporating factual allegations . . . into a second count and reciting conclusory language that this conduct was also reckless, without providing any additional factual underpinnings, is not sufficient to convert a complaint of negligence into one of recklessness. . . "Reckless," "recklessness," "wanton," "misconduct," and alleged violations of statutes are conclusions of law.

*Titus v. Holcomb*, No. LLICV136009681S, 2014 WL 1345322, at *3 (Conn. Super. Ct. Mar. 11, 2014) (internal citations and quotation marks omitted) (citing *Silano v. Exxonmobil Oil Corp.*,

No. CV–04–0409151–S, 2005 WL 648158 (Conn. Super. Ct. Feb. 24, 2005); *Smith v. Verma*, No. KNL-CV–13–6015809–S, 2013 WL 6916781 (Conn. Super. Ct. Dec. 6, 2013)).

Indeed, the plaintiffs in *Craig* alleged facts sufficient to support an inference that the defendant acted recklessly. In that case, which involved claims brought by family members of a woman who was killed by a man who drove after leaving a pub intoxicated, the plaintiffs sufficiently pled a claim of recklessness by alleging that the defendant, a pub and its permittee, served alcohol to a man when they knew of his "excessive drinking habits," that he was already intoxicated, that he "had driven while intoxicated in the past," and that he would drive a vehicle after leaving the pub that night. *Id.* at 341-42.

Finally, Mr. Lynk quotes the Connecticut Supreme Court as stating that "[t]he use of the word 'reckless' or 'recklessness' in a complaint, without any specific allegation of conduct which is either reckless or wanton, is sufficient to require a charge on reckless or wanton misconduct." Lynk Opp. Memo. at 8 (quoting *Dumond v. Denehy*, 145 Conn. 88, 90 (Conn. 1958)). But this quote does not reflect the court's holding in *Dumond*; it simply summarizes the plaintiff's position. *Dumond*, 145 Conn. at 90 ("Briefly the plaintiff's claim in this respect can be summarized as follows: The use of the word 'reckless'. . ."). In the paragraph immediately following this sentence, the court stated its actual—and opposite—holding: "Simply using the word 'reckless' or 'recklessness' is not enough. A specific allegation setting out the conduct that is claimed to be reckless or wanton must be made." *Dumond*, 145 Conn. at 91 ("There is a wide difference between negligence and a reckless disregard of the rights or safety of others and a complaint should employ language explicit enough to clearly inform the court and opposing counsel that reckless misconduct is relied on.' The complaint in the instant case fell far short of alleging a cause of action for reckless or wanton misconduct.").

For these reasons, Count Two of Mr. Lynk's Amended Complaint insufficiently pleads a common law recklessness claim against Mr. Brayboy.

Accordingly, the claim will be dismissed.

### 2. Mr. Smith's common law recklessness claim against Mr. Brayboy

Defendants argue that Mr. "Smith has failed to plead sufficient allegations which would allow the [C]ourt to infer that [Mr.] Brayboy's conduct was reckless." Memo. Sup. Mot. to Dismiss Smith Am. Compl. at 8. To support their argument, Defendants compare this case to *Figliomeni v. C.S.R. Getty, LLC*, No. CV030479244S, 2003 WL 22708694 (Conn. Super. Ct. Nov. 3, 2003).

In *Figliomeni*, a Connecticut Superior Court dismissed a recklessness claim in a motor vehicle accident because it was "barren of factual allegations which can permit the court or opposing counsel to ascertain in what way particular specifications of negligence occurred under such circumstances so as to make the defendant's actions reckless." 2003 WL 22708694, at *1-2. The plaintiff in *Figliomeni* alleged that the defendant "continued to ignore traffic rules and to travel at an exorbitant amount of speed despite the fact that he was in a residential neighborhood." *Id.* at *1.

This allegation was insufficient to support a recklessness claim because "[t]he rate of speed [wa]s characterized as exorbitant but not further defined in relation to the speed limit . . . ," *Id.* at *2, and because the plaintiff failed to allege other circumstances sufficiently to infer that the plaintiff's actions reflected recklessness:

> There are no allegations, for example, that the violations and ensuing accident occurred when due to weather conditions or time of day visibility was poor, or that road conditions presented a special hazard, or that at the time of the accident there was heavy traffic at or beyond the intersection or that the nature of the

> intersection or any curve in the road or ascent or decline in the road limited the
> defendant's ability to observe a car in the position the plaintiff's car was located.

*Id.*

Defendants argue that Mr. Smith, like the plaintiff in *Figliomeni*, failed to pledge facts enabling the Court to infer that Mr. Smith acted recklessly. Memo. Sup. Mot. to Dismiss Smith Am. Compl. at 10-11.

The Court disagrees.

Mr. Smith's factual allegations are distinguishable from those in *Figliomeni*. Mr. Smith has alleged specific facts providing context by which the Court can evaluate Mr. Brayboy's alleged conduct and infer that Mr. Brayboy made a conscious choice to take action when he knew or should have known that his action posed a danger to others, including that Mr. Brayboy was driving on too little sleep—he had allegedly "been awake for 19 hours, of which in excess of 18 hours was on duty, and in excess of 16 hours was spent driving . . ." after sleeping for "only 4 hours and 15 minutes . . ." Smith Am. Compl. ¶ 14-15.

Furthermore, Mr. Brayboy had allegedly been "taken out of service for ten hours by a state trooper . . . for an hours of service (HOS) violation" at 8:18 p.m. the evening of the accident from which this action arises. *Id.* ¶ 16. From these allegations, the Court can reasonably infer that Mr. Brayboy knew or should have known, at least two hours before the accident, that he had already been awake and driving too long to continue driving safely. Yet Mr. Brayboy allegedly "resumed driving approximately 30-45 minute[s]" after the state trooper had taken him out of service for ten hours for a HOS violation. *Id.* These allegations illustrate that Mr. Brayboy

> had been continuously awake for 19 hours, on duty for 18 hours, and driving for
> at least sixteen hours, with only 4 hours and fifteen minutes of sleep the preceding
> night, and continued to operate in direct contravention to an out of service order
> issued to him by a state trooper approximately 2 hours before.

*Id.* ¶ 21. The Court thus can reasonably infer that Mr. Brayboy made the conscious decision to continue driving the freightliner, even though he knew or should have known that he had been driving too long on too little sleep to drive safely, and therefore he should have known that his decision to continue driving might put others in danger.

Also, unlike the plaintiff in *Figliomeni*, Mr. Smith did define Mr. Brayboy's speed in relation to the speed limit: "At the time of the aforementioned collision, [D]efendant Brayboy was operating the [D]efendants' motor vehicle between 65 and 70 miles per hour in a 55 mile per hour speed zone." *Id.* ¶ 18.

The court in *Figliomeni* court noted that "it has been always the law in our state that under some circumstances a high rate of speed may not be [even] negligence." 2003 WL 22708694, at *2. (citing Wright, Fitzgerald and Ankerman, Connecticut Law of Torts (3d ed.), § 100, *Rapuano v. Oder*, 181 Conn. 515, 519-20 (1980)). Whether driving faster than the speed limit constitutes negligence or recklessness in a given case, however, is a question to be addressed at a later stage of this case. *See Rapuano*, 181 Conn. at 519-20 ("[Connecticut General Statutes § 14-218a] authorizes the state traffic commission and the traffic authority of any municipality to establish and post speed limits for state and local highways and roads . . . [and] provide[s]: "Any speed in excess of such limits . . . shall be prima facie evidence that such speed is not reasonable . . . It does not, however, preclude his opponent from introducing evidence tending to prove that, under all of the circumstances, the speed of his motor vehicle was, nonetheless, reasonable.").

Mr. Smith therefore has alleged sufficient facts to sustain his claim of common law recklessness against Mr. Brayboy.

Accordingly, the Court will not dismiss this claim.

**B. Common law recklessness claims against Penske and Dawn Defendants**

Both Mr. Lynk and Mr. Smith make common law recklessness claims against Penske and Dawn. Mr. Lynk brings this claim against Dawn Transportation. Mr. Smith brings this claim against all Penske and Dawn Defendants.

As discussed above, recklessness is "more than negligence, more than gross negligence." *Scandul*, 2017 WL 1086766, at *2 (internal citation omitted); *see supra*, Part A. Recklessness entails "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent . . . . and [i]t is at least clear . . . that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention." *Craig*, 262 Conn. at 343 (internal citation omitted).

Recklessness entails "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent . . . . and [i]t is at least clear . . . that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention." *Craig*, 262 Conn. at 343 (internal citation omitted). It "requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable [person]." *Scandul*, 2017 WL 1086766. at *2 (citing *Bishop v. Kelly*, 206 Conn. 608, 614 (1988)).

**1. Mr. Lynk's common law recklessness claim against Dawn Transportation**

In order to survive a motion to dismiss, a plaintiff must allege facts supporting a reasonable inference that the defendant made a conscious decision to take an action "either with

knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable [person]." *Scandul*, 2017 WL 1086766, at *2.

Mr. Lynk claims that Dawn Transportation allowed Mr. Brayboy to operate the freightliner, despite knowing that the freightliner's brakes were defective and had not been adequately inspected, maintained, or repaired; that Dawn had failed to repair and maintain the truck in proper working order in accordance with federal and/or state regulations; that Dawn had failed to inspect the truck on an annual, regular, systematic, and/or daily basis in accordance with federal regulations; and that Mr. Brayboy had been operating the freightliner beyond the maximum driving time permitted by federal and state regulations. Lynk Am. Compl. Third Count, ¶ 12.

Defendants argue that Mr. Lynk failed to allege any details "which would allow the [C]ourt to infer that Dawn had knowledge that [Mr.] Brayboy was operating the freightliner" under conditions that would "disclose . . . danger to a reasonable [person] and yet still permitted him to drive the truck." Memo Sup. Mot. to Dismiss Lynk Am. Compl. at 12.

Mr. Lynk argues that the Defendants wrongfully "attempt to construe each of [P]laintiff's allegations of recklessness separately to support their position that each allegation fails to state a claim for relief" and urges the Court to "read[] the allegations of the Second and Third Count in their totality."

The Court agrees with Defendants.

Mr. Lynk's factual allegations are insufficient to allow the Court to infer that Dawn Transporation made a conscious choice to allow Mr. Brayboy to drive a vehicle with faulty brakes, that had not been adequately inspected or repaired, beyond the maximum driving time allowed by applicable regulations. Mr. Lynk does not allege what Dawn Transportation may or

may not have done or known. Conclusory claims that Dawn Transportation knowingly permitted Mr. Brayboy to drive under dangerous conditions are insufficient to allege a claim of recklessness against Dawn Transportation. The factual allegations in Count Three thus lack the specificity necessary to sustain Mr. Lynk's common law recklessness claims. Taken together, Counts Two and Three fail to allege facts with sufficient specificity to sustain Mr. Lynk's common law recklessness claims.

As a result, Count Three of Mr. Lynk's Amended Complaint fails to state a common law recklessness claim against Dawn Transportation. Accordingly, the Court will dismiss this claim.

### 2. Mr. Smith's common law recklessness claims against Penske and Dawn

Mr. Smith brings common law recklessness claims against the Penske Defendants, which allegedly owned the freightliner driven by Mr. Brayboy at the time of the accident, Smith Am. Compl. ¶ 12; and Dawn Defendants. Mr. Brayboy was allegedly "acting as the agent, servant, and/or employee of" the Dawn Defendants at the time of the accident. *Id.* ¶ 13.

Mr. Smith alleges that Penske and Dawn were reckless

in that they permitted [D]efendant Brayboy to operate a poorly maintained vehicle which should have been taken out of service, with (1) the clamp brakes out of adjustment, Axle 2, right; (2) the automatic airbrake adjustment system not compensating for wear; (3) the brakes out of service with greater than or equal to 20% of the brakes found to be defective; all in violation of General Statutes Section 14-163c and/o 49 C.F.R. parts 382 to 397, inclusive.

Smith Am. Compl. ¶ 22.

Defendants argue that

[t]his allegation, including that the vehicle 'should have been taken out of service,' is entirely conclusory. There is no factual allegation that the alleged mechanical faults played any causative role in the accident . . . [nor] any factual details which allow the Court to make the inference that any of the corporate

defendants made any conscious decisions to allow [Mr.] Brayboy to operate the vehicle in a mechanically defective condition.

Memo. Sup. Mot. to Dismiss Smith Am. Compl. at 11.

The Court agrees, in part.

First, the statement that the vehicle "should have been taken out of service" is not a factual allegation, but a conclusory statement entitled to no weight. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Setting that statement aside, as this Court must because of its conclusory nature, the Court considers the remaining allegations.

Mr. Smith alleges numerous mechanical issues with the freightliner's brakes which, if true, would make driving the truck in violation of state and federal regulations. Penske Defendants, as the truck's alleged owners, presumably had or should have had protocols in place to ensure that their trucks were being regularly inspected and repaired so that they would not be driven unsafely or in violation of state and federal regulations. It is reasonable for the Court to infer, from the allegation that a Penske truck with these deficiencies was being driven at all, that the Penske Defendants knew or should have known that one of their trucks was being driven in a condition that made it a danger to others. Furthermore, it is reasonable for the Court to infer that problems with a mechanical component as essential as brakes contributed to the accident that caused Plaintiff's injuries. Mr. Smith therefore has alleged sufficient facts to sustain a recklessness claim against the Penske Defendants.

These allegations, however, do not clearly implicate the Dawn Defendants. Mr. Smith does not allege facts that enable the Court to infer that the Dawn Defendants knew or should have known that their employee was either driving a truck with safety issues or

driving with too sleep, against the order of a police officer. Mr. Smith does not allege that the Dawn Defendants had any minimum sleep or maximum driving time policies, or policies of checking in on drivers, or how such policies might have been applied or not applied in this case. Nor does Mr. Smith allege that the Dawn Defendants had any specific knowledge of Mr. Brayboy's encounter with the state trooper the evening of the accident. Nor does Mr. Smith allege facts tending to show that the Dawn Defendants knew or should have known of any deficiencies with the truck that their employee was driving. There are thus no facts from which the Court can infer that the Dawn Defendants made a conscious decision to allow their employee to drive under conditions that they knew or should have known put others in danger.

As a result, Mr. Smith has sufficiently pled his common law recklessness claims against Penske Defendants and the Court will not dismiss these claims. Mr. Smith, however, has not sufficiently plead his common law recklessness claims against the Dawn Defendants and the Court will dismiss these claims.

### C. Plaintiffs' statutory recklessness claims against Mr. Brayboy

Both Plaintiffs make statutory recklessness claims against Mr. Brayboy under Connecticut General Statutes § 14-295.

Under that law, if a plaintiff "specifically plead[s] that another party has deliberately or with reckless disregard operated a motor vehicle in violation of section 14-218a, 14-219, 14-222, . . . section 14-230, [or several other Connecticut motor vehicle laws,] and that such violation

was a substantial factor in causing such injury, death or damage to property," the "trier of fact may award double or treble damages." Conn. Gen. Stat. § 14-295.

### 1. Mr. Smith's statutory recklessness claim against Mr. Brayboy

Defendants argue that "statutory recklessness "requires the same level of culpability as common law recklessness." *Scandul*, 2017 WL 1086766, at *2. Under this standard, Defendants argue that Mr. "Smith has failed to plead sufficient details which would allow this Court to infer that Brayboy was reckless. Rather, Smith relies on legal conclusions that Brayboy acted recklessly . . . " Memo. Sup. Mot. To Dismiss Smith Am. Compl. at 7.

Mr. Smith argues, however, that in order to state a claim of statutory recklessness under Connecticut General Statutes § 14-295, a plaintiff need only recite the elements of § 14-295— "that the defendant deliberately or with reckless disregard violated one of the statutes enunerated in § 14-295, and . . . that the violation was a substantial factor in causing the plaintiff's injuries." Opp. Mot. to Dismiss at 6. As Mr. Smith points out, Connecticut Superior Courts have stated that "that there is a split of authority among the Superior Courts as to the pleading requirements which trigger the operation of § 14–295." *Sears v. Brooks*, No. HHD-CV-15-6060624-S, 2015 WL 9871320, at *4 (Conn. Super. Ct. Dec. 14, 2015).

Mr. Smith appends two Connecticut Superior Court cases supporting his position to his Opposition to Defendants' Motion to Dismiss, quoting one of those cases as follows:

> There is a split of opinions in the Superior Court as to the degree of pleading necessary for a claim of statutory recklessness. The minority view . . . holds that a plaintiff must not only plead a statutory violation as set forth in § 14-295, but also facts that would support a claim of reckless conduct at common law. . .
>
> The majority of the superior courts find that merely reciting § 14-295 is sufficient. . . Under the majority view, a claim for statutory recklessness is legally sufficient so long as it alleges that the defendant deliberately or with reckless disregard violated one of the statutes enumerated in § 14-295, and further asserts that the violation was a substantial factor in causing the plaintiff's injuries. . . Under the

majority view, as long as the general requirements of the statute are met, such pleading is enough to survive a motion to strike and to state a cause of action under § 14-295.

Opp. Mot. to Dismiss at 6 (quoting *Morey v. Helgens*, No. NNH-CV-11-6024529-S, 2011 WL 7095173, at *3 (Conn. Super. Ct. Dec. 30, 2011), and citing *Matthiessen v. Dombek*, No. FST-CV-11-6008291-S, 2012 WL 1222381 (Conn. Super. Ct. Mar. 23, 2012); both appended as Ex. A, ECF No. 39) (internal citations, quotation marks, and emphasis omitted)).

The Court acknowledges the variety of opinions among the Connecticut Superior Courts. The Court also notes that District of Connecticut courts have found, interpreting Connecticut Supreme Court opinions, that statutory recklessness claims, like common law recklessness claims, require factual allegations sufficient for a reasonable inference of recklessness. As the District of Connecticut has noted, *see, e.g., Scandal*, 2017 WL 1086766, at *2, the Connecticut Supreme Court stated in *Bishop* that § 14-295

> incorporates standards that have long been recognized at common law. . . [and thus] requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable [person], and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent.

206 Conn. at 614 (internal quotation marks omitted); *see also Deckler v. Olander*, No. 3:12-CV-00277, 2014 WL 359064, at *2 (D. Conn. Feb. 3, 2014) (citing *Bishop* for the statement that "[s]tatutory recklessness, pursuant to Connecticut General Statutes § 14-295 requires the same level of culpability as common law recklessness").

The Court ultimately does not have to decide whether to adopt the view of the majority view of Connecticut Superior Courts or other courts in this District because the Court finds that Mr. Smith's complaint has satisfied both standards.

Specifically, Mr. Smith argues that Mr. Brayboy is liable for statutory recklessness under § 14-295 of Connecticut General Statutes in that he, "with deliberate and reckless disregard for the safety of others,"

    (a) was operating [D]efendants' motor vehicle in excess of the posted speed limit, in violation of [Conn. Gen. Stat. §] 14-219;

    (b) was operating defendants' motor vehicle at an unreasonable rate of speed in view of the traffic, weather and road conditions there and then prevailing, in violation of [Conn. Gen. Stat. §] 14-218a; and

    (c) was operating defendants' motor vehicle while fatigued and with inadequate sleep, in that he had been continuously awake for 19 hours, on duty for 18 hours, and driving for at least sixteen hours, with only 4 hours and fifteen minutes of sleep the preceding night, and in direct contravention of an out of service order issued by the Connecticut State Police directing him not to drive for at least 10 hours, all in violation of [Conn. Gen. Stat. §] 14-222.

Smith Am. Compl. ¶ 20. Mr. Smith also alleges that this recklessness was a substantial factor in causing the injuries alleged herein . . . " *Id.*

Under the majority view of Connecticut Superior Courts, these allegations are sufficient. Mr. Smith alleges facts which, if true, would indeed violate each of these statutes. He also alleges that Mr. Brayboy acted with deliberate and reckless disregard for the safety of others in violating those laws, and that his recklessness caused Mr. Smith's injuries. Under the Connecticut Superior Court majority view, this is sufficient to state a claim of statutory recklessness.

As the Court discussed above with regard to Mr. Smith's common law recklessness claim against Mr. Brayboy, the Court can reasonably infer from the alleged facts that Mr. Brayboy made a conscious decision to drive despite knowing—or despite that he should have known— that his decision to drive put others in danger. Mr. Smith thus also adequately states a § 14-295 claim under the District of Connecticut's interpretation of the Connecticut Supreme Court's decision in *Bishop*, 206 Conn. 608.

Mr. Smith therefore has sufficiently pled factual allegations sufficient to support his statutory recklessnss claim under either view of the requirements for § 14-295.

Accordingly, the Court will not dismiss this claim.

### 2. Mr. Lynk's statutory recklessness claim against Mr. Brayboy

Mr. Lynk also makes a statutory recklessness claim against Mr. Brayboy under Connecticut General Statutes § 14-295, claiming that Mr. Brayboy acted deliberately or with reckless disregard in violation of Connecticut General Statutes §§ 14-218a, 14-219(a), 14-222, and 14-230. Lynk Am. Compl., Fourth Count.

Defendants argue that, as with the common law recklessness claim, Mr. Lynk fails to allege facts that would support an inference that Mr. Brayboy made a conscious decision to take an action that he knew, or that a reasonable person would know, would put others in danger.

As explained with regard to Mr. Smith's statutory recklessness claim against Mr. Brayboy, the Court acknowledges differing interpretations of the pleading standard required by § 14.295. *See supra,* Part C.1. But Mr. Lynk has failed to state a claim for statutory recklessness.

Specifically, Mr. Lynk claims that Mr. Brayboy is liable for statutory recklessness under § 14-295 of Connecticut General Statutes in that he

 (a) deliberately or with reckless disregard operated the freightliner at a greater rate of speed than was reasonable, having regard to the width, traffic, and use of the highways, intersection of streets, and weather conditions, in violation of C.G.S. § 14-218a, and said violation was a substantial factor in causing the [P]laintiff's injuries;

 (b) deliberately or with reckless disregard operated said freightliner at such a rate of speed as to endanger the life of the [P]laintiff, in violation of C.G.S. § 14-219(a), and said violation was a substantial factor in causing the [P]laintiff's injuries;

 (c) deliberately or with reckless disregard operated said freightliner in a reckless and dangerous mannger having regard to width, traffic, and use of the highway and weather conditions, in violation of C.G.S. § 14-222, and said violation was a substantial factor in causing the [P]laintiff's injuries;

(d) deliberately or with reckless disregard failed to operate the freightliner in the right-hand lane and as close as practicable to the edge of the highway in violation of C.G.S. § 14-230a, and said violation was a substantial factor in causing the [P]laintiff's injuries.

Am. Compl., Fourth Count ¶ 12.

Mr. Lynk, however, does not allege any specific facts that could allow a court to infer that Mr. Brayboy violated the statutes in claims (a)-(c). Moreover, in claim (d) Mr. Lynk misstates what conduct the relevant statute prohibits. Connecticut General Statute § 14-230a prohibits any "operator of any motor vehicle with a commercial registration" who is driving on a highway with "more than two lanes for traffic proceeding in the same direction" from driving "in the extreme left lane" except in limited circumstances. CONN. GEN. STAT. § 14-230a. This statute does not, as Plaintiff suggests, require commercial freightliner operators to drive "in the right-hand lane and as close as practicable to the edge of the highway." Lynk Am. Compl., Fourth Count, ¶ 12. Even if Mr. Lynk had properly characterized § 14-230a, he did not allege that Mr. Brayboy was driving in the left-hand lane at all. In fact, he alleged specifically that Mr. Brayboy was driving in the right-hand lane. *Id.*, First Count ¶ 10. Mr. Lynk thus has neither properly claimed that Mr. Brayboy violated § 14-230a nor alleged facts to support this claim.

As a result, Count Four of Mr. Lynk's Amended Complaint, the claim of statutory recklessness against Mr. Brayboy, fails to state a claim.

Accordingly, the Court will dismiss this claim.

## IV.     CONCLUSION

For the following reasons, the Defendants' motion to dismiss Mr. Lynk's Amended Complaint is **GRANTED**, and the Defendants' motion to dismiss Mr. Smith's Complaint is **DENIED** in part and **GRANTED** in part**.**

To the extent that the deficiencies identified in this ruling can be remedied, Mr. Smith and Mr. Lynk have until **November 1, 2019** to move for leave to file amended pleadings.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of September, 2019.

/s/ Victor A. Bolden

VICTOR A. BOLDEN

UNITED STATES DISTRICT JUDGE